IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED
2007 AUG 20 P 2: 16

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JEREMY LEE HILTON and RENAE MARIE HILTON, BOTH INDIVIDUALLY AND AS NEXT FRIENDS OF K.E.H. ▮▮▮▮, THEIR MINOR DAUGHTER<br><br>Plaintiffs<br><br>VS.<br><br>UNITED STATES OF AMERICA<br><br>Defendant | CIVIL ACTION NO. 2:07CV-741-MHT |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs, Jeremy Lee Hilton and Renae Marie Hilton, Individually, and as Next Friends of K.E.H. ▮▮▮▮, their Minor daughter, hereinafter sometimes referred to as "Plaintiffs," and files this their **Plaintiffs' Original Complaint** complaining of the United States of America, hereinafter sometimes referred to as "Defendant," and would respectfully show the Court the following:

I.

### PARTIES, JURISDICTION, SERVICE OF PROCESS, AND VENUE

1.1   This is a medical malpractice case.

1.2   Plaintiffs, Jeremy Lee Hilton and Renae Marie Hilton, Individually, and as Next Friends of K.E.H. ▮▮▮▮, their Minor daughter, reside at 8125 Fletcher Hill Drive, Montgomery, Alabama 36117.

1.3   The Defendant is the United States of America.

1.4   This Federal District Court has jurisdiction of this cause because this action is brought pursuant to and in compliance with 28 U.S.C §§1346(b), 2671-2680 et

seq., commonly known as the "Federal Tort Claims Act," which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

**1.5**   The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and **Plaintiffs' Original Complaint** on the United States Attorney for the Middle District of Alabama, by Certified Mail, Return Receipt Requested at her office, Leura G. Canary, United States Attorney, Middle District of Alabama, 131 Clayton Street, Montgomery, Alabama 36104, to the attention of the Civil Process Clerk, and by serving a copy of the Summons and **Plaintiffs' Original Complaint** on Alberto R. Gonzales, Attorney General of the United States, by Certified Mail, Return Receipt Requested, at the Attorney General's Office, 10th and Constitution Avenue, N.W., Washington, DC 20530, to the attention of the Civil Process Clerk.

**1.6**   Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), as the United States is a Defendant and the Plaintiffs reside in this district and have their domicile in this district.

## II.

## LIABILITY OF THE UNITED STATES OF AMERICA

**2.1**   This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§2671-2680, commonly referred to as the "Federal Tort Claims Act." Liability of the United States is predicated specifically on Title 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made, were proximately caused by the negligence, wrongful acts and/or omissions of employees of the United States of America at Malcolm Grow USAF Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinic, Andrews Air Force Base and at Bethesda Naval

Medical Center, including the OB/GYN Clinic, Bethesda, Maryland, while acting within the scope of their office or employment, under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual.

### III.

### JURISDICTIONAL PREREQUISITES

**3.1** Plaintiffs plead pursuant to Title 28 U.S.C. §§ 2672 and 2675(a), that on August 18, 2004, within two years of the date of the actions giving rise to this cause of action, the claims set forth herein were filed with and presented administratively to the Defendant's agencies. These claims were initially denied on November 8, 2006. Amended claims were filed with and presented administratively to the Defendants' agencies the United States Air Force, the United States Army and the United States Navy on January 17, 2007. A letter requesting the claims be re-opened and re-considered was filed on January 29, 2007. The United States Air Force, the United States Army and the United States Navy denied all these claims on February 21, 2007. Therefore, this suit is timely filed pursuant to 28 U.S.C. § 2401(b). Accordingly, Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

### IV.

### THE AIR FORCE, ARMY AND NAVY ARE AGENCIES OF THE UNITED STATES OF AMERICA

**4.1** The United States Air Force, the United States Army and the United States Navy are agencies of the United States of America. The United States of America, Defendant herein, through its agency, the United States Air Force, at all times material hereto, owned, operated and controlled the health care facility known as Malcolm Grow

USAF Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinic, located at Andrews AFB, Maryland, and through its agencies, the United States Air Force, the United States Army, and the United States Navy, staffed said health care facilities with its agents, servants, and/or employees. The United States of America, Defendant herein, through its agency, the United States Navy, at all times material hereto, owned, operated and controlled the health care facility known as Bethesda Naval Medical Center, including the OB/GYN Clinic, located at Bethesda, Maryland, and through its agency, the United States Navy, the United States Army, and the United States Air Force staffed said health care facilities with its agents, servants, and/or employees.

## V.

## EMPLOYMENT AND COURSE AND SCOPE

5.1   At all times material hereto, all persons involved in the medical and health care services provided to Renae Marie Hilton, at Malcolm Grow USAF Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinics, located at Andrews Air Force Base, Maryland, were agents, servants, and/or employees of the Department of the Air Force, the United States Army, the United States Navy, the United States of America, or some other agency thereof, and were at all times material hereto, acting within the course and scope of such employment. At all times material hereto, all persons involved in the medical and health care services provided to Renae Marie Hilton, at Bethesda Naval Medical Center, including the OB/GYN Clinic, located at Bethesda, Maryland, were agents, servants, and/or employees of the Department of the Air Force, the United States Army, the United States Navy, the United States of America, or some other agency thereof, and were at all times material hereto, acting within the course and scope of such employment.

VI.

## FACTS

**6.1** This is a Federal Tort Claims Action for monetary damages sustained by the Plaintiffs resulting from personal injuries to K.E.H. ███████████, a Minor, as a result of substandard, and therefore, negligent medical care.

**6.2** More specifically, this claim concerns the substandard medical, nursing, and hospital care provided by agents, servants, and employees of the United States at Malcolm Grow Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinics, on Andrews Air Force Base, Maryland; and at Bethesda Naval Medical Center, including the OB/GYN Clinic, in Bethesda, Maryland during Renae Hilton's entire pregnancy and delivery, and the substandard medical, nursing, and hospital care provided by agents, servants, and employees of the United States following the delivery of her baby, K.E.H. ███████████, on November 25, 2002.

**6.3** This claim also concerns the substandard antepartum, intrapartum and postpartum medical, nursing, and hospital care by agents, servants, and employees of the United States at Malcolm Grow Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinics, on Andrews Air Force Base, Maryland;; and at Bethesda Naval Medical Center, including the OB/GYN Clinic, in Bethesda, Maryland during Renae Hilton's entire pregnancy, labor, and delivery of K.E.H. ███████████, which occurred on November 25, 2002, resulting in the permanent personal injury and irreversible brain damage and its sequalea to K.E.H. ███████████.

**6.4** On or about April 2002, Renae Hilton started receiving her prenatal care at the Malcolm Grow Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinics, on Andrews Air Force Base, Maryland.

6.5 On or about October 2002, Renae Hilton started receiving her prenatal care at Bethesda Naval Medical Center, including the OB/GYN Clinic, in Bethesda, Maryland.

6.6 Throughout her pregnancy, Renae Hilton attended all of her prenatal appointments as scheduled by the government healthcare provider employees.

6.7 Throughout her entire pregnancy, the government healthcare employees performed numerous antepartum obstetrical ultrasounds on Renae Hilton's unborn baby, K.E.H.

6.8 When the government healthcare employees performed the antepartum obstetrical ultrasounds, they did so to evaluate the health and well being of baby K.E.H.

6.9 During the course of performing the antepartum obstetrical ultrasounds on K.E.H., the government healthcare providers evaluated, or should have evaluated K.E.H.'s fetal cardiac activity; done a qualitative estimate of amniotic fluid volume; made a gestational age assessment by measuring the biparietal diameter, abdominal circumference and femoral diaphysis length; and made a fetal weight estimate.

6.10 In addition, during the course of performing the antepartum obstetrical ultrasounds on K.E.H., the government healthcare providers assessed, or should have assessed, K.E.H.'s head and neck, including her cerebellum, choroid plexus, cisterna magna, lateral cerebral ventricles, midline falx, and cavum septi pellucidi.

6.11 In addition, during the course of performing the antepartum obstetrical ultrasounds on K.E.H., the government healthcare providers assessed, or should have assessed, K.E.H. chest, which includes a four-chamber view of the fetal heart.

6.12 In addition, during the course of performing the antepartum obstetrical ultrasounds on K.E.H., the government healthcare providers assessed, or should have assessed, K.E.H.'s abdomen, including her stomach (presence, size and situs),

kidneys, bladder, umbilical cord insertion site into the fetal abdomen, and umbilical cord vessel number.

6.13  In addition, during the course of performing the antepartum obstetrical ultrasounds on K.E.H., the government healthcare providers assessed, or should have assessed, K.E.H.'s cervical, thoracic, lumbar, and sacral spine.

6.14  In addition, during the course of performing the antepartum obstetrical ultrasounds on K.E.H., the government healthcare providers assessed, or should have assessed, K.E.H.'s extremities.

6.15  Finally, during the course of performing the antepartum obstetrical ultrasounds on K.E.H., the government healthcare providers assessed, or should have assessed, K.E.H.'s gender.

6.16  During the pregnancy, baby K.E.H. developed a condition in utero called aqueductal stenosis, which lead to the development of hydrocephalus.

6.17  During the pregnancy, baby K.E.H.'s head started to expand abnormally from the hydrocephalus.

6.18  On or about November 23, 2002, Renae Hilton's water broke.

6.19  Ms. Hilton immediately went to Bethesda Naval Medical Center.

6.20  The government healthcare providers performed an antepartum obstetrical ultrasound and induced labor.

6.21  Renae Hilton underwent approximately 35 hours of induced labor before the government healthcare providers delivered baby K.E.H. by c-section because of her failure to progress.

6.22  The government healthcare providers conducting the delivery had difficulty removing baby K.E.H.'s head from her mother's uterus due to her large head size.

6.23  Following her birth, K.E.H. was immediately diagnosed with massive hydrocephalus.

6.24  Her head circumference was documented as being 49.5 cm, which is approximately the head size of a three-year-old child.

6.25  K.E.H. suffered extensive bruising and contusions on the back of her head, and additional brain damage, and its sequela, from having her head forced into her mom's pelvis over a prolonged period of time during the labor.

6.26  Had the government healthcare employees appropriately performed the antepartum obstetrical ultrasounds, in all reasonable medical probability they would have diagnosed baby, K.E.H.'s hydrocephalus.

6.27  By failing to timely and appropriately perform appropriate prenatal testing, including but not limited to genetic testing and antepartum obstetrical ultrasounds, the government healthcare employees failed to timely diagnose and appropriately treat K.E.H.'s hydrocephalus, thereby causing her to suffer severe permanent and irreversible brain damage, and its sequela.

6.28  As a direct and proximate result of the substandard antepartum, intrapartum and postpartum medical, nursing, and hospital care of K.E.H. by agents, servants, and employees of the United States at Malcolm Grow Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinics, on Andrews Air Force Base, Maryland; and at Bethesda Naval Medical Center, including the OB/GYN Clinic, in Bethesda, Maryland, K.E.H. has suffered significant and permanent injuries, including but not limited to severe brain injury and its sequela, and profound mental retardation.

6.29  K.E.H. now suffers from craniosynostosis, which to date, has required two massive craniofacial vault reconstruction surgeries.

6.30    In addition, K.E.H. suffers from severe facial and head disfigurement, and will suffer from these disfigurements for the rest of her natural life.

6.31    The full extent of K.E.H.'s injuries is not completely known at this time due to her age.

6.32    Had the government healthcare employees at Malcolm Grow Medical Center, 89 AW/JAD, including the Family Practice Clinic and the OB/GYN Clinics, on Andrews Air Force Base, Maryland; and at Bethesda Naval Medical Center, including the OB/GYN Clinic, in Bethesda, Maryland, followed the appropriate standard of care, in all reasonable medical probability K.E.H. would be normal today.

### VII.

### CAUSE OF ACTION AGAINST THE UNITED STATES OF AMERICA

7.1    Defendant, the United States of America, was negligent in one or more of the following respects:

1. In failing to appropriately perform K.E.H.'s antepartum obstetrical ultrasounds;
2. In failing to timely and appropriately perform appropriate prenatal testing on _____ Hilton;
3. In failing to appropriately read and interpret K.E.H. Hilton's antepartum obstetrical ultrasounds;
4. In failing to timely diagnose K.E.H.'s hydrocephalus;
5. In failing to timely and appropriately treat K.E.H.'s hydrocephalus;
6. In failing to timely and properly deliver K.E.H.;
7. In failing to timely and properly care for K.E.H.;
8. In failing to timely and properly treat K.E.H.;
9. In failing to timely and properly diagnose K.E.H.;
10. In failing to timely and properly evaluate K.E.H.;

11. In failing to timely and properly monitor K.E.H. ; and

12. In failing to timely and properly assess K.E.H. .

**7.2** At all times mentioned herein, the employees, agents, and/or representatives of the United States Government were negligent and causative of the injuries and damages sustained by Plaintiffs.

## VIII.

## DAMAGES

**8.1** As a direct and proximate result of the negligence of United States employee health care providers, K.E.H. has suffered significant and permanent injuries, including but not limited to severe brain injury and its sequela, and profound mental retardation and numerous other sequela, resulting in damages and injuries including but not limited to past and future mental anguish, past and future physical pain and suffering, past and future disfigurement, past and future permanent physical impairment, past and future permanent mental impairment, past and future loss of earnings and earning capacity, past and future medical, health care, and attendant care expenses, past and future loss of enjoyment of life, loss of parent-child consortium, loss of companionship, love, nurturing, and affection with her parents, Jeremy Hilton and Renae Hilton. Such injuries are, in reasonable probability, permanent in nature. Plaintiffs, Jeremy Lee Hilton and Renae Marie Hilton, Individually, and as Next Friends of K.E.H. , a Minor, brings this suit to recover all damages cognizable under the law resulting from the injuries to K.E.H. as a result of the occurrence in question.

**8.2** As a direct and proximate result of the negligence of United States employee health care providers, Jeremy Hilton and Renae Hilton have a daughter that

-10-

has suffered significant and permanent injuries, including but not limited to severe brain injury and its sequela, and profound mental retardation and numerous other sequela, resulting in damages and injuries to them including but not limited to past and future mental anguish, past and future loss of earnings and earning capacity, past and future loss of enjoyment of life, past and future medical, health care, and attendant care expenses, past and future attendant care delivered by Jeremy Hilton and Renae Hilton, loss of parent-child consortium, loss of companionship, love, nurturing, and affection with their child, K.E.H. ▇▇▇▇▇▇▇▇▇▇. Such injuries are, in reasonable probability, permanent in nature. Plaintiffs, Jeremy Lee Hilton and Renae Marie Hilton, bring this suit to recover all damages cognizable under the law resulting from the injuries to K.E.H. ▇▇▇▇▇▇▇▇▇▇ and to themselves as a result of the occurrence in question.

## IX.

### MEANING OF "DEFENDANT"

**9.1** In this Complaint, whenever the term "Defendant" is used, it means Defendant, Defendant's officers, agents, servants, employees, and/or representatives. Whenever in this Complaint it is alleged that Defendant did any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees, and/or representatives did such act or thing, and that at the time such act or thing was done, it was done with the full authorization and ratification of Defendant and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, and/or representatives. Whenever in this Complaint it is alleged that Defendant omitted any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees, and/or representatives omitted such act or thing.

## X.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request that the Defendant be cited in terms of law to appear and answer herein: that upon final trial and hearing hereof, the Plaintiffs have judgment against the Defendant, for the amount of actual damages; and for such other and different amounts as they shall show by proper amendment before trial; for post judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiffs may show themselves entitled and to which the Court believes them deserving.

Respectfully submitted,

By: _____
GEORGE J. HANKO III
(Pro Hac Vice Admission Anticipated)
Texas State Bar Number 08915550
**SICO, WHITE & BRAUGH, L.L.P.**
Frost Bank Tower
401 Congress Avenue; Suite 1540
Austin, Texas 78701
Telephone: (512) 473-0333
Telefax: (512) 473-0333
e-mail: ghanko@swbtrial.com

**ATTORNEYS FOR PLAINTIFFS**

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000188
Cashier ID: khaynes
Transaction Date: 08/20/2007
Payer Name: SICO WHITE AND BRAUGH LLP
-----------------------------------
CIVIL FILING FEE
 For: SICO WHITE AND BRAUGH LLP
 Case/Party: D-ALM-2-07-CV-000741-001
 Amount:         $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 80203
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


JEREMY HINTON ET AL V. USA
```